1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA,              No.  1:12-cr-00360-DAD-BAM

12                    Plaintiff,            ORDER DENYING DEFENDANT'S
                                            MOTION TO RECONSIDER, ENJOIN
13        v.                                GOVERNMENT FROM SPENDING FUNDS,
                                            AND SET ASIDE CONVICTION
14   RAYMOND A. GENTILE,
                                            (Doc. No. 178, 204)
15                    Defendants.

16

17                            **INTRODUCTION**

18        Before the court is defendant Raymond Gentile's September 14, 2016 motion to: (1)

19   correct the court's pretrial order denying defendant's motion to dismiss or enjoin the

20   government's expenditure of funds in connection with his prosecution; (2) enjoin the

21   government's expenditure of funds to prosecute this case and for evidentiary hearing; and (3) set

22   aside his conviction.  (Doc. No. 178.)  On October 11, 2016, the government filed its opposition

23   to the motion.  (Doc. No. 182.)  On October 24, 2016 defendant Gentile filed his reply and

24   declarations in support thereof.  (Doc. Nos. 184, 185, 186.)  On October 25, 2017, the

25   government filed a surrebuttal in opposition to defendant's motion.  (Doc. No. 187.)   On October

26   31, 2016, defendant submitted exhibits in reply to the government's surrebuttal.  (Doc. Nos. 188,

27   189.)

28   /////

                                          1

On October 31, 2016, a hearing was held on defendant's motion. Attorney Eric Fogderude appeared on behalf of defendant Gentile. Assistant U.S. Attorney Karen Escobar appeared on behalf of the government. Defendant's request for an evidentiary hearing was granted and evidence was taken at that time. (Doc. No. 191.) Specifically, the parties stipulated to the evidentiary hearing being based on consideration of declarations submitted by the parties, the evidence presented at trial and in other proceedings held in this case as well as live testimony presented at the hearing. (Doc. No. 210 at 25, 35.) Bakersfield Deputy City Attorney Richard Iger and DEA Special Agent Christopher Grimm were called to testify at the evidentiary hearing. (*Id*. at 9-38.) At the end of the evidentiary hearing, the parties agreed that the submission of additional evidence by way of declaration was appropriate. (*Id*. at 41-42.)

On November 4, 2016, the government filed a supplemental memorandum in opposition to defendant's motion along with supporting exhibits. (Doc. No. 195.) On November 21, 2016, the government submitted additional documents under seal in support of its opposition. (Doc. No. 203.) On November 28, 2016, defendant filed a reply to the government's supplemental opposition and declaration in support thereof. (Doc. Nos. 205, 206.) After seeking and being granted a limited opportunity to do so, on December 2, 2016, the government filed a surrebuttal to defendant's latest reply. (Doc. No. 209.) On December 9, 2016, defendant Gentile filed a reply to the government's surrebuttal, arguing that the government's filing should be stricken as exceeding the scope of the court's limited authorization permitting its filing.[1] (Doc. No. 211.)[2]

After considering the parties' arguments, all of the evidence submitted as well as the briefing of the parties, and for the reasons set forth below, defendants' motion will be denied save

/////

/////

---

[1] Defendant's objection to the government's final filing – that it does not present any new argument but rather merely rehashes evidence presented and arguments previously made – is not without some merit. Nonetheless, the court denies the request to strike. To some extent both parties have engaged in presenting repetitive arguments in connection with the pending motion.

[2] On December 16, 2016, the court vacated defendant's sentencing hearing pending resolution of the pending motion.

and except as to his request for an evidentiary hearing.[3]

## PROCEDURAL HISTORY

This criminal proceeding has a lengthy and somewhat complicated procedural history which the court will summarize before turning to the merits of the pending motion. The Indictment returned on October 18, 2013, charged defendant Raymond Gentile with conspiracy to manufacture, distribute, and/or possess with the intent to distribute marijuana in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(b) (Count 1); manufacture of marijuana and aiding and abetting in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count 2); possession with the intent to distribute marijuana and aiding and abetting in violation of 21 U.S.C.§§ 841(a)(1) and 841(b)(1)(B) and 18 U.S.C. § 2 (Count 3); and false statements in violation of 18 U.S.C.§ 1001 (Counts 4 and 5).

After extensive pretrial proceedings, on April 22, 2016, defendant filed a motion to dismiss or, alternatively, to enjoin the government from spending funds to prosecute the case against him. (Doc. No. 101.)[4] In that motion, defendant Gentile argued that what has been referred to as the Farr-Rohrabacher Amendment to the Consolidated and Further Continuing Appropriations Act of 2015, Pub. L. No. 113-235 § 538, 128 Stat. 2130, 2217 (2014), required either dismissal of the indictment brought against him or, alternatively, an order enjoining the government from spending funds to prosecute him on those charges.[5] (*Id*.) Defendant also argued in passing that the continued classification of marijuana as a Scheduled I controlled substance lacks a rational basis, is arbitrary, violative of equal protection and that the selective enforcement of the federal marijuana law violates the principle of equal sovereignty. (*Id*.) The

/////

---

[3] As indicated above, defendant's request for a post-trial evidentiary hearing was granted.

[4] This case had been reassigned to the undersigned on December 4, 2015. (Doc. No. 96.)

[5] Although not specified by defendant's motion, the court presumed that it was aimed only at the counts of the indictment in which the defendant is charged with violations of the Controlled Substances Act involving marijuana as opposed to the false statement counts brought against the defendant under 18 U.S.C. § 1001.

motion was fully briefed and argument was heard.[6] (Doc. Nos. 103, 107, 111.) By written order filed June 30, 2016 and amended July 8, 2016, defendant's motion was denied with the court concluding that the district courts addressing similar arguments based on the Farr-Rohrabacher Amendment had all concluded that it did not entitle defendants to either dismissal of federal marijuana charges brought against them nor to an order enjoining the expenditure of funds in connection with their prosecution. (Doc. Nos. 131, 138.)

Trial of this action commenced on July 19, 2016. On July 22, 2016, the jury returned their verdict, finding the defendant guilty of all five counts of the indictment. (Doc. No. 160.) A sentencing hearing was then scheduled and the matter referred to the U.S. Probation Office for preparation of a presentence report.

However, on August 16, 2016, the Ninth Circuit Court of Appeals issued its decision in *United States v. McIntosh*, 833 F.3d 1163 (9th Cir. 2016) in which the court held that criminal defendants charged with marijuana offenses in federal court were entitled to an evidentiary hearing to determine whether their conduct was completely authorized and in strict compliance with state law governing the use, distribution, possession, and cultivation of medical marijuana such that § 542 of the Consolidated Appropriations Act of 2016 prohibited the U.S. Department of Justice from expending funds to prosecute them. *See* Pub. L. No. 114–113, 129 Stat. 2242, 2332–33, § 542.[7] In light of the decision in *McIntosh*, on September 14, 2016, counsel on behalf of defendant Gentile filed the motion that is now before the court. (Doc. No. 178.)

/////

/////

---

[6] No evidentiary hearing was requested by the defendant in connection with that motion.

[7] The Farr-Rohrabacher Amendment, § 538, upon which defendant's pretrial motion was based, was reenacted as § 542 of the Consolidated Appropriations Act of 2016, and remained in effect through September 30, 2016. *See United States v. Nixon*, 839 F.3d 885, 887 (9th Cir. 2016) (reasoning that the two riders were "essentially the same"). Congress has failed to enact a new appropriations act since the Act of 2016 and government funding has been provided since September 30, 2016, pursuant to continuing resolutions, the latest of which is scheduled to expire on April 28, 2017. However, for purposes of the pending motion the government has stipulated that § 542 remains in effect. To avoid confusion, the appropriations rider upon which defendant's motion is based will be referred to as "§ 542" throughout this order.

**ARGUMENTS OF THE PARTIES**

**I. Defendant Gentile**

In his pending motion defendant Gentile argues that in light of the decision in *McIntosh* his pretrial motion to dismiss all charges against him or to enjoin the government from prosecuting this case should have been granted and that this court should now issue a corrected order granting it. (Doc. No. 178 at 2; Doc. No. 185 at 3.) Defendant Gentile also renews his pretrial motion and seeks an order enjoining the government from continuing with this prosecution as well as prohibiting his sentencing. (*Id.*) Next, he seeks an evidentiary hearing which would include consideration of declarations and evidence previously submitted in this action as well as the testimony presented at trial.[8] (*Id.* at 5.) Finally, defendant contends that because the government violated § 542 by pursuing this prosecution, the appropriate remedy is to "dismiss," vacate, or set aside all of his conviction, including those on Counts 4 and 5 for making false statements in violation of 18 U.S.C. § 1001, and to stay any further prosecution pending any developments with respect to § 542. (*Id.* at 5-6.) However, defendant later altered that position, stating that the proper remedy here was to vacate his three marijuana convictions and proceed to sentencing on the unrelated false statement convictions. (Doc. No. 205 at 4.)

In support of this motion defendant's counsel argues, and defendant Gentile himself declares in many instances, as follows. Defendant operated the ANP Medicinal Cooperative, Inc. (hereinafter "ANP") in Bakersfield as a non-profit "medical Marijuana" collective or dispensary in compliance with California law up until the time of his arrest. (Doc. Nos 178 at 2; 184 at 2.) At no time did ANP sell marijuana for profit, but rather members of ANP would make cash donations to cover the costs of ANP's overhead and operating expenses in exchange for marijuana. (Doc. Nos. 184 at 2; 205 at 5.)[9] In any event, the sale of marijuana for cash by cooperatives is allowed under California law as long as such fees are reasonably calculated to

---

[8] As indicated, this aspect of defendant's motion was granted, an evidentiary hearing was conducted on October 31, 2016, and the parties have drawn to the court's attention trial testimony and other evidence before the court in support of their respective positions.

[9] At trial defendant Gentile testified that his operation of ANP was "consistent with the California laws regulating medical marijuana collectives . . . ." (Doc. No. 178 at 3.)

cover overhead and operating expenses.  (Doc. No. 205 at 5.)  Here, DEA Agent Grimm failed to confirm the exact amount of ANP's expenses.  (*Id*.)  ANP staff always verified that members were qualified patients by contacting the recommending physician and verifying the physician's license.  (Doc. Nos. 184 at 2; 185 at 3.)  Requiring that its members sign membership agreements was not a sham to mask unlawful sales of marijuana but rather was a recommended practice for collectives to follow.  (Doc. No. 185 at 4.)  Neither ANP nor defendant was required under state law to serve as a primary caregiver for members.  (Doc. No. 205 at 5-6.)  ANP received a business license from the City of Bakersfield.  (Doc. Nos. 184 at 2; 185 at 3.)[10]  Up until defendant's arrest, ANP's taxes were always paid in accordance with law.  (Doc. Nos. 184 at 3; 185 at 5.)  ANP's 2011 tax returns were not due to be filed until September 15, 2012, because its accountant had obtained an extension until that date.  (Doc. Nos. 205 at 6; 206 at 2.)  The $68,173 in cash seized by federal agents from ANP at the time of the search consisted of "earnings and savings of the business" which was intended to be used to pay expenses of ANP including the purchase of a permanent site, presumably in the future.  (Doc. Nos. 184 at 3; 185 at 6.)  Agent Grimm's trial testimony that defendant had reported ANP's monthly revenue as being between $20,000 and $30,000 was not evidence that it was selling marijuana for a profit because defendant also said that all revenues were allocated to cover overhead and operating expenses and not to profit.  (Doc. No. 185 at 3.)  The fact that a small amount of methamphetamine was found at ANP at the time of the search does not indicate that defendant was not operating in compliance with California medical marijuana law because, as he testified at trial, he was unaware of its presence and was never prosecuted for it.  (Doc No. 185 at 6.)  Finally, the fact that a Mossberg shotgun and a Glock pistol were seized at ANP at the time of the search likewise fails to establish a lack of compliance with state law because he was not charged with any offense in connection with the weapons and their possession is not prohibited.  (*Id.*; Doc. No. 205 at 7.)

/////

---

[10]  Defendant later modified this contention, asserting that ANP received a business tax certificate from the City of Bakersfield and that the Bakersfield Police Department was aware that ANP was operating a medicinal marijuana clinic at that location and took no action against it for allegedly violating any zoning ordinance or other city regulation.  (Doc. No. 205 at 4.)

With respect to the law governing consideration of the pending motion, defendant argues that the burden of establishing that § 542 does not enjoin his prosecution rests with the government since that provision is directed at the government. (Doc. Nos 185 at 2; 205 at 2.) Alternatively, defendant suggests that if he bears an initial burden in this regard, the burden is a slight one which, once met, shifts to the government to prove beyond a reasonable doubt that he was not compliance with state law. (Doc. No. 205 at 2-3.)

## II. The Government

The government contends that defendant Gentile is not entitled to relief under the decision in *McIntosh* because the evidence makes clear that he did not strictly comply with state medical marijuana laws and, therefore, § 542 does not prohibit the federal government's expenditure of funds in prosecuting him. (Doc. No. 182 at 2, 5-6.) The government also contends that it is the defendant's burden under these circumstances to establish by a preponderance of the evidence that he was in strict compliance with California's laws governing medical marijuana. (Doc. Nos. 182 at 6-7; 187 at 1-2; 195 at 2-5.) The government suggests that this is the case because, under California law, a medical marijuana defense is an affirmative defense. (Doc. Nos. 187 at 1-2; 195 at 3-4.) In addition, the government also points to the fact that Congress could have but did not place this burden on the government in enacting § 542 and that placing the burden on defendant is in keeping general principles relating to imposition of the burden of proof. (Doc. No. 2-5.) The government asserts, however, that regardless of who bears the burden of proof on this issue, the evidence in this case clearly establishes that defendant was not in strict compliance with California law applicable to this area and that § 542 served as no impediment to his federal prosecution. (Doc. No. 182 at 7.)[11]

/////

---

[11]  The government agreed that under the holding in *McIntosh*, the defendant was entitled to an evidentiary hearing. However, the government notes that even if defendant met his burden of demonstrating his strict compliance with California medical marijuana laws following an evidentiary hearing, the only remedy he would be entitled to is a vacating of his convictions on the marijuana charges, counts one through three, and a stay of the proceedings only with respect to those counts. (Doc. No. 195 at 5-6.) Defendant has since conceded this point. (Doc. No. 205 at 3-4.)

Regarding defendant Gentile's lack of compliance with state law, the government asserts as follows.[12] Trial testimony established that defendant was selling marijuana at ANP for a profit. (*Id*.) Specifically, the defendant told DEA Agent Grimm that his marijuana revenue was between $25,000 and $30,000 per month. (Doc. Nos. 182 at 7; 200-1 at 29; 210 at 23.) Given his known expenses for rent, utilities and a single employee paid in cash as opposed to marijuana, as well as the lack of records reflecting any other expenditures on his part, defendant's profit from marijuana sales can be conservatively estimated to be $20,150 per month, whereas California law prohibits the cultivation or distribution of marijuana for a profit. (Doc. Nos. 182 at 4, 7-8; 187 at 2; 195 at 9.) Moreover, ANP did not operate as a cooperative in adherence to the California Attorney General Guidelines for the Security and Non-Diversion of Marijuana Grown for Medical Use ("AG Guidelines") because it simply supplied marijuana to its members for a price. (Doc. Nos. 182 at 8; 195 at 8.) There is no evidence, other than defendant's word, that he ever verified that ANP "members" were qualified patients or ever contacted recommending physicians to verify the validity of those recommendations. (Doc. Nos. 182 at 8; 187 at 2.) There is also no indication that defendant or his employees were primary caregivers to the over 1,000 members of ANP as required under California law. (Doc. Nos. 182 at 8; 187 at 2; 195 at 9-11.) While defendant may have applied for a business license, he did not receive one, but rather was merely issued a business tax certificate by the City of Bakersfield. (Doc. Nos. 182 at 9; 187 at 2-3.) In any event, he was prohibited from dispensing marijuana within the City of Bakersfield pursuant to that City's Resolution and zoning laws banning medical marijuana dispensaries because, under state law, cities are free to prohibit facilities that distribute marijuana and Bakersfield did so. (Doc. Nos. 182 at 9-10; 187 at 3; 195 at 6-8.)[13] The agreements defendant required ANP

[12] The government contends that defendant's general claims of compliance with state law are based only on his own conclusory declarations and are unsupported by any evidence.

[13] The government argues that under a 2004 Bakersfield City Council resolution, marijuana dispensaries were not permitted in that city. Defendant contends that the 2004 resolution was merely a non-enforceable policy statement and that an enforceable ordinance was not passed in Bakersfield until 2013. (Doc. No. 185 at 4.) The government, in turn, points to the unpublished decision in *Concerned Citizens of Bakersfield v. City of Bakersfield*, No. F069768, 2015 WL

8

members to sign were a mere sham to disguise marijuana sales as a cooperative effort and have been recognized as such in the AG Guidelines.  (Doc. Nos. 182 at 9-10.)  During at least part of its existence ANP was not incorporated and thus not in compliance with state law in that respect.  (*Id.* at 10.)   ANP was also not a democratically controlled cooperative as required by the AG Guidelines.  (*Id.* at 11-12.)  The AG Guidelines state that the failure to follow state and local laws is evidence of an unlawful marijuana operation.  Nonetheless, ANP last filed a state corporate tax return in 2010, failing to do so in 2011 and 2012, and its corporate status was suspended for non-payment of taxes.  (Doc. Nos. 182 at 12; 187 at 4; 195 at 12.)  Finally, seized during the search of ANP was an excessive amount of cash ($68,173), methamphetamine and firearms – all identified as indicia of an unlawful operation in the AG Guidelines.  (Doc. Nos. 182 at 13; 187 at 5.)

In short, the government argues that the evidence submitted at trial and in connection with this motion establishes that defendant Gentile operated ANP as a for profit marijuana storefront business in a city that had banned such businesses and did so in a manner not otherwise in compliance with California law.  (Doc. No. 195 at 13.)

Below, the court will address the decision in *McIntosh* and each aspect of defendant Gentile's pending motion.

/////

/////

5047787, at *5-6 (2015) in which the California Court of Appeal for the Fifth Appellate District observed that, while subject to some confusion, Bakersfield's 2013 Ordinance did nothing to change the city's zoning laws regarding marijuana dispensaries because the 2004 resolution was sufficient to prohibit dispensaries within the city.  (Doc. No. 195 at 6-7.)  Defendant has moved to strike the government's reference to the unpublished state appellate court opinion, contending that it is noncitable.  The government is correct in noting that there is authority for the proposition that while unpublished California Court of Appeal decisions have no precedential value, they may nonetheless be considered by federal courts in determining the nature of California law.  *See Employers Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003) (citing *Nunez v. City of San Diego*, 114 F.3d 935, 943 n. 4 (9th Cir.1997)); *see also Allstate Insurance Co. v. Chacksfield*, 604 Fed. Appx. 588, 589 (9th Cir. 2015).  Here, the court agrees that the unpublished state appellate court decision in *Concerned Citizens of Bakersfield* lends some support to the government's contention that defendant Gentile's operation of ANP was contrary to Bakersfield's zoning rules and was therefore not in strict compliance with California medicinal marijuana laws.  Moreover, testimony provided at the evidentiary hearing supports that conclusion as well.  (See Doc. No. 210 at 10-15.)

# ANALYSIS

## I.      Section 542 and the *McIntosh* Decision

On December 18, 2015, Congress enacted an act appropriating funds through the fiscal year ending September 30, 2016.  Section 542 of that Consolidated Appropriations Act of 2016 provides, "[n]one of the funds made available in this Act to the Department of Justice may be used, with respect to any of the States . . . to prevent them from implementing their own laws authorize the use, distribution, possession, or cultivation of medical marijuana."  Pub. L. No. 114–113, 129. Stat. 2242, 2332–33, § 542.

As noted above, in *United States v. McIntosh*, 833 F.3d 1163 (9th Cir. 2016), the Ninth Circuit addressed the impact of § 542 on federal marijuana prosecutions of those claiming to have acted in compliance with state law governing marijuana related activities.  In *McIntosh* the court construed the plain text of the appropriations rider at issue in assessing the appellants' assertion that their criminal prosecution must be enjoined and concluded

> that § 542 prohibits the federal government only from preventing the implementation of those specific rules of state law that authorize the use, distribution, possession, or cultivation of medical marijuana. DOJ does not prevent the implementation of rules authorizing conduct when it prosecutes individuals who engage in conduct unauthorized under state medical marijuana laws. *Individuals who do not strictly comply with all state-law conditions regarding the use, distribution, possession, and cultivation of medical marijuana have engaged in conduct that is unauthorized, and prosecuting such individuals does not violate § 542.*  Congress could easily have drafted § 542 to prohibit interference with laws that address medical marijuana or those that regulate medical marijuana, but it did not.  Instead, it chose to proscribe preventing states from implementing laws that authorize the use, distribution, possession, and cultivation of medical marijuana.
>
> * * *
>
> If DOJ wishes to continue these prosecutions, *Appellants are entitled to evidentiary hearings to determine whether their conduct was completely authorized by state law, by which we mean that they strictly complied with all relevant conditions imposed by state law on the use, distribution, possession, and cultivation of medical marijuana.*  We leave to the district courts to determine, in the first instance and in each case, the precise remedy that would be appropriate.
>
> We note the temporal nature of the problem with these prosecutions.  The government had authority to initiate criminal

10

proceedings, and it merely lost funds to continue them. DOJ is currently prohibited from spending funds from specific appropriations acts for prosecutions of those who complied with state law. But Congress could appropriate funds for such prosecutions tomorrow. Conversely, this temporary lack of funds could become a more permanent lack of funds if Congress continues to include the same rider in future appropriations bills. In determining the appropriate remedy for any violation of § 542, the district courts should consider the temporal nature of the lack of funds along with Appellants' rights to a speedy trial under the Sixth Amendment and the Speedy Trial Act, 18 U.S.C. § 3161.

833 F.3d at 1179 (emphasis added). The court in *McIntosh* did not, however, address who has the burden of proving strict compliance with state law in this regard and what that burden is.

## II.    Defendant's Motion to Correct Order Denying His Pretrial Motion to Dismiss

Although somewhat unclear, it appears that defendant Gentile has requested that the court: (1) "correct" its pretrial order denying his motion for a stay; and (2) dismiss all charges, or alternatively all marijuana related charges, brought against him in this action. (Doc. No. 178.) Under the decision in *McIntosh*, defendant Gentile is not entitled to this requested relief.

Defendant has provided no grounds upon which the court should reconsider its denial of his pretrial motion for a stay and the court will not revisit that ruling. Defendant has also not established that he is entitled to dismissal of any of the charges brought against him, even were it established that § 542 was violated in this case by the Department of Justice. In *McIntosh*, while leaving to the district courts the determination of the appropriate remedy for violation of § 542 on a case by case basis, the Ninth Circuit suggested that the temporal nature of the expenditure ban militated against dismissal of federal marijuana charges. 833 F.3d at 1179 & n. 5.

To the extent defendant now seeks "correction" of the court's pretrial order denying his motion for a stay or for the dismissal of some or all of the charges against him, his motion will be denied. Rather, if it were established that the government violated § 542 by expending funds in connection with this prosecution, the appropriate remedy would be to vacate defendant's convictions on the marijuana charges, counts one through three of the indictment. *See United States v. Sileutsabay,* ___Fed. Appx.___, 2017 WL 766985, at *1-2 (9th Cir. Feb. 28, 2017)[14]

---

[14] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36–3(b).

11

(following conditional pleas of guilty, convictions conditionally vacated in light of the determination defendants were entitled to an evidentiary hearing under *McIntosh* with convictions to be re-instated after that hearing, if appropriate).

### III.    Defendant's Request for an Evidentiary Hearing under *McIntosh*

As conceded by the government, upon request, defendant Gentile was entitled to an evidentiary hearing on the issue of his strict compliance with California law governing medicinal marijuana in light of the decision in *McIntosh*.  833 F.3d at 1179.  The court granted defendant's request and an evidentiary hearing was held, with the parties agreeing that the court could also consider the evidence presented at trial and in connection with pretrial motions in this action. The court notes that although *McIntosh* was decided after the trial in this action was held, nothing precludes the court from conducting a post-trial evidentiary hearing to address this issue.  Rather, it has been recognized that under these circumstances, in the event a violation of § 542 is found, the appropriate remedy is to vacate the already obtained marijuana related convictions. *See Sileutsabay*, 2017 WL 766985, at *2.

### IV.    Defendant's Motion to Set Aside Marijuana Convictions and Enjoin the Government From Spending Funds to Prosecute This Case

Now that an evidentiary hearing has been conducted, defendant Gentile's motion to set aside his marijuana convictions and to enjoin the government from spending funds in prosecuting him on those charges, under § 542 and *McIntosh*, is ripe for decision.   For the reasons explained below, the court concludes that defendant is not entitled to that requested relief in light of the evidence presented.

#### A.  Burden of Proof and Standard of Proof

At the time of the October 31, 2016 evidentiary hearing, the court indicated a belief that the government bore the burden of proving the defendant's lack of compliance with California law.  (Doc. No. 210 at 7.)  However, since that time the undersigned has had the opportunity consider that issue again, aided by the briefing of parties in another case specifically addressing the burden of proof in the context of a challenge brought under § 542. *See United States v. Daleman*, 1:11-CR-00385-DAD-BAM, 2017 WL 1256743 (E.D. Cal. Feb. 17, 2017).  In that

case the undersigned concluded:

> [T]he court [has] determined that it is the defendant who bears the burden of proof on this issue. That determination was made based upon this court's consideration of: (1) the plain text of the appropriations rider;[15] (2) the traditional rule considering the allocation of the burden of proof which, "based on considerations of fairness, does not place the burden upon a litigant of establishing facts particularly within the knowledge of his adversary [.]" *United States v. New York, New Haven & Hartford Railroad Co.*, 355 U.S. 253, 256 n.5 (1957); and (3) the general rule "that the proponent of a motion bears the burden of proof." *United States v. Veon*, 538 F. Supp. 237, 245–46 (E.D. Cal. 1982).

> Finally, the court concluded that the burden borne by the defendant was to prove that he was in strict compliance with California marijuana laws by a preponderance of the evidence. The evidentiary hearing on this issue of compliance with state law is similar to other ancillary proceedings outside the criminal trial where a preponderance of the evidence standard is employed. *See, e.g., Veon*, 538 F. Supp. at 248 (applying a preponderance of the evidence standard for a criminal forfeiture hearing). Although the court [has] rejected any notion that by seeking to enjoin the expenditure of funds on his prosecution defendant is raising an affirmative defense to the pending federal charges, this conclusion that the preponderance of the evidence standard applies is consistent with the burden of proof imposed upon a defendant in presenting an affirmative defense. *See United States v. Sandoval-Gonzalez*, 642 F.3d 717, 723 (9th Cir. 2011); *United States v. Cruz*, 554 F.3d 840, 850 (9th Cir. 2009) ("Generally, 'the defendant must prove the elements of [an] affirmative defense by a preponderance of the evidence,' unless some other standard is set by statute.") (quoting *United States v. Beasley*, 346 F.3d 930, 934 (9th Cir. 2003) (concluding that the defendant bears the burden of proving the affirmative defense of justification by a preponderance of the

---

[15] As the government persuasively argued, "Congress could have, but did not, explicitly place the burden on the government of demonstrating non-compliance when it enacted the appropriations riders." (Doc. No. 127 at 11) (citing *Gonzales v. O Centro Espirita Beneficente Unaio De Vegetal*, 546 U.S. 418, 424 (2006) (noting that, Congress explicitly placed the burden on the government to prove that it has a compelling interest in barring the use of peyote under the Religious Freedom Restoration Act).) In determining Congressional intent, the court is limited to the text of the appropriations rider. *See, e.g. McIntosh*, 833 F.3d at 1178 ("It is a fundamental principle of appropriations law that we may only consider the text of an appropriations rider, not expressions of intent in legislative history.") In other parts of the Consolidated Appropriations Act where Congress restricted the use of funds upon an agency, it has specifically stated when the funds can be used, what requirements must be satisfied to use the funds, and by whom. *See, e.g.,* Pub. L. No. 114–113, 129 Stat. 2242, 2332–33, § 7048 ("Of the funds appropriated by this act that are available for a contribution to the Global Fund to Fight AIDS, Tuberculosis and Malaria (Global Fund), 10 percent should be withheld from obligation until the Secretary of State determines and reports to the Committees on Appropriations that the Global Fund is ...") (emphasis added). Congress has not done so in Section 542.

evidence because it "does not involve the refutation of any of the elements of [the charged offense], but requires proof of additional facts and circumstances distinct from the evidence relating to the underlying offense."))[16]

*Daleman*, 2017 WL 1256743, at *3-4.

Nothing in the parties' briefing in the present case persuades the court that it should question this conclusion as to the burden of proof and who bears it. Therefore, the reasoning set forth immediately above is adopted here as well. However, the court also concludes that even were it the government's burden to prove the defendant's lack of compliance with California law it has done so here as explained below.

### B. Whether the Defendant was in Strict Compliance with California's Medical Marijuana Laws

The sale and possession of marijuana is unlawful under California law and this remains the case for purposes of the pending motion. *See* Cal. Health & Safety Code §§ 11359, 11360; *see also People v. Trippet*, 56 Cal. App. 4th 1532, 1546 (1997); *People ex re. Lungren v. Peron*, 59 Cal. App. 4th 1383, 1389 (1997). Nonetheless, this court must consider the parties' evidence in light of California's Compassionate Use Act ("CUA") and the Medical Marijuana Program Act ("MMPA"). California's CUA, passed as Proposition 215 in 1996, provides immunity from prosecution for violating state law to a "patient, or to a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician." Cal. Health & Safety Code § 11362.5(b)(1)(C). In 2003, the California Legislature enacted the MMPA to clarify the scope of the CUA. "In addition to establishing the identification card program, the MMP[A] also defines certain terms, sets possession guidelines for cardholders, and recognizes a qualified right to collective and

---

[16] Notably, the plain language of the rider merely places an obligation upon the Department of Justice not to spend funds. As the Ninth Circuit has made clear, this is an issue ancillary to federal marijuana prosecutions since the Controlled Substances Act continues to prohibit the manufacture, distribution and possession of marijuana and "§ 542 does not provide immunity from prosecution" for those offenses. *McIntosh*, 833 F.3d at 1179 & n. 5. Thus, it cannot be said that defendant [ ] is presenting an affirmative defense to the pending federal charges by way of his motion to enjoin.

14

cooperative cultivation of medical marijuana." California Attorney General's Guidelines for the Security and Non-Diversion of Marijuana Grown for Medical Use (Aug. 2008) at 2, available at available at http://ag.ca.gov/cms_attachments/press/ pdfs/n1601_medicalmarijuanaguidelines.pdf ("AG Guidelines") (citing Cal. Health & Safety Code §§ 11362.7, 11362.77, 11362.775).[17]

As noted above, the government contends that in several specific and obvious ways defendant Gentile's operation of ANP Medical Cooperative was not in compliance with state law. The court considers each contention and defendant's response thereto in turn.

### 1. Defendant Was Selling Marijuana for Profit

"Nothing in Proposition 215 or the MMP authorize collectives, cooperatives, or individuals to profit from the sale or distribution of marijuana." AG Guidelines at 9 (citing § 11362.765(a)).

As set out above, the government argues defendant was selling marijuana for profit. According to Agent Grimm's trial testimony, at the time of the search plaintiff reported ANP took in approximately $25,000 to $30,000 per month in revenue. (Doc. No. 200-1 at 29; *see also* Doc. No. 190-1 at 62; Doc. No. 210 at 23.) Agent Grimm's tabulation of sales receipts found at ANP at the time of the search on June 28, 2012, substantiated defendant Gentile's estimate of ANP's monthly sales. (*Id*. at 36-37.)

Defendant Gentile now maintains that this amount of revenue is not evidence of his selling marijuana for profit because it was used solely to cover overhead and operating expenses. According to defendant, all but one of the volunteers who worked at ANP were compensated only with marijuana or gas money and the one employee who was paid received only $750 a month. Additionally, according to defendant, his rent at ANP was $2,400 a month and the electricity bill was $1,700 a month. The only other evidence regarding overhead expenses was: (1) although defendant Gentile was attempting to grow all the marijuana sold at ANP on sight, he had not yet achieved self-sufficiency in this regard and was sometimes required to purchase two to five pounds of marijuana at a time for $2,500 to $3,000 from trusted vendors (i*d*. at 27-28); and (2)

---

[17] California Health & Safety Code § 11362.81(d) required the California Attorney General to establish guidelines clarifying the scope of the MMPA.

ANP would purchase some food and cigarillos from a tobacco company (Doc. No. 190-1 at 23).

According to the government, after deducting all known expenses and overhead costs, defendant's total profit amounted, conservatively, to $20,150 per month.[18]  Defendant has not come forward with any evidence to show that all of ANP's revenues were required to cover overhead costs and expenses.  Indeed, even if one takes the low of defendant's own estimate of revenues and also assumes (without support from any evidence offered by defendant) that monthly costs for food, tobacco products, marijuana cultivation expenses and purchases of marijuana to supplement supply ran another $10,000 per month, defendant was still generating a profit through marijuana sales of at least $10,000 per month.  His only retort is that any excess funds were to be spent to acquire a permanent home for ANP.  That contention is wholly unpersuasive.  The evidence before the court establishes by clear and convincing evidence that defendant was generating a profit through his operation of ANP and thus was not in compliance with California law with respect to medical marijuana.  Certainly, defendant Gentile has failed to establish otherwise.

This instance of failing to strictly comply with state law by operating at a profit is alone a sufficient basis upon which to find that § 542 was not violated by the government in prosecuting defendant on counts one through three of the indictment.

2.  Defendant Was Not a Qualified Patient or Primary Caregiver and Did Not Verify Member Status

"A primary caregiver is a person who is designated by a qualified patient and 'has consistently assumed responsibility for the housing, health, or safety' of the patient."  AG Guidelines at 4.  The AG Guidelines instruct primary caregivers to verify the qualified patient's status by checking medical marijuana identification cards and contacting the recommending physician.  *Id.* at 9.

Although he maintains that ANP and its staff verified each member's status as a qualified patient by "contacting the recommending physician and verifying the physician['s] state license

---

[18]  Thus, the government argues, defendant's cooperative was not a true cooperative as all it did was supply marijuana to customers for a price.

status," defendant has not come forward with copies of membership records, verification forms, the expiration dates of medical marijuana recommendations or any other evidence demonstrating that he and his employees were qualified patients or primary caregivers. Simply requiring individuals to sign membership agreements is insufficient. The AG Guidelines highlight, "dispensaries that merely require patients to complete a form summarily designating the business owner as their primary caregiver – and then offering marijuana in exchange for cash 'donations' – are likely unlawful." *Id.* at 11 (citing *Peron*, 59 Cal. App. 4th at 1400).

Defendant has not satisfied his burden of proving by preponderance of the evidence that he was a qualified patient or primary caregiver and that he verified the status of each member who purported to be a qualified patient. Strict compliance with state law has therefore not been established.

3. <u>Defendant's Failure to Comply With Local Law Establishes His Failure to Act in Strict Compliance with California's Medical Marijuana Laws</u>

As noted, California law governing medicinal marijuana requires compliance with all local laws. The evidence before this court establishes that although defendant obtained a business tax certificate from the City of Bakersfield, he did not have a business license as required. Moreover, and perhaps more importantly, he could not get a business license because he could not obtain a conditional use permit to operate ANP in Bakersfield since that city had prohibited the operation of marijuana dispensaries within its boundaries. (See Doc. No. 210 at 10-15.)

Specifically, Bakersfield City Council Resolution 252-04 provided, "[m]edical marijuana dispensaries are not permitted uses within any zone in the City of Bakersfield." (Doc. No. 182-1 at 4, Ex. B.) Bakersfield Municipal Code § 5.02.070 also provides, "[n]o business tax certificate issued under the provisions of this chapter or the payment of any taxes required under the provisions of this chapter shall be construed as authorizing the conduct or continuance of any illegal business or of any legal business in an illegal manner . . . ." Instructive with respect to California law in this area is the case of *City of Riverside v. Inland Empire Patients Health & Wellness Center, Inc.*, 56 Cal. 4th 729, 737–38 (2013). There, the City of Riverside prohibited the use of land to operate medical marijuana dispensaries and provided that such operations may

17

be abated as a public nuisance.  In light of that zoning ordinance, the City brought a nuisance action against a medical marijuana dispensary.  Defendants challenged the injunction arguing that the local ban was preempted by the state statutes.  The California Supreme Court found that "[n]othing in the CUA or the MMP expressly or impliedly limits the inherent authority of a local jurisdiction by its own ordinances to regulate the use of its land, including the authority to provide that facilities for the distribution of medical marijuana will not be permitted to operate within its borders."  *City of Riverside*, 56 Cal. 4th at 737–38; *see also Concerned Citizens of Bakersfield v. City of Bakersfield*, No. F069768, 2015 WL 5047787, at *1 (Cal. Ct. App. Aug. 26, 2015) (concluding that the Bakersfield Municipal Code and resolution proscribing the operation of medical marijuana dispensaries as public nuisances were not preempted by the CUA and the MMPA and that "[e]ven without adopting the 2013 ordinance, the City had the authority pursuant to former BMC sections 17.12.040 (now BMC § 17.06.040)[19], 17.08.040 and 17.72.010—to bring an action to abate a public nuisance against any medical marijuana dispensary operating in the City on the ground the dispensary was not a permitted use.")

Defendant argues that the issuance of a business tax certificate and other evidence presented establishes that the City of Bakersfield knew that ANP was a medical marijuana cooperative and, despite this knowledge, did not bring any action contending that ANP was in violation of any conditional use permit, zoning law or other city regulation.  That argument misses the mark.  It is irrelevant whether the city elected to take steps to enforce its laws, ordinances or regulations.  The question before this court, under the decision in *McIntosh*, is solely whether the defendant was in strict compliance with state law regarding medical marijuana.  To be in strict compliance with California law in this area, defendant was required to be in compliance with local law.  The evidence in this case establishes clearly and convincingly that defendant did not operate ANP in strict compliance with local zoning ordinances and other legal requirements.

---

[19]  Bakersfield Municipal Code § 17.06.040 provides, "[n]o land shall be used, and no building or structure shall be erected, constructed, enlarged, altered, moved or used in any zone, as shown upon the zoning map, except in accordance with the regulations established by this title."

18

Again, this alone is a sufficient basis upon which to conclude that § 542 was not violated by the government in prosecuting defendant on counts one through three of the indictment in this case.

4. Defendant Did Not Comply with California Corporate Law

While dispensaries are not formally recognized under the law, "the only recognized group entities are cooperatives and collectives." AG Guidelines at 11. The AG Guidelines also provide that while such storefront dispensaries organized as collectives or cooperatives may be lawful, "dispensaries that do not substantially comply with the guidelines set forth in Sections IV(A) and (B) above, are likely operating outside the protections of Propositions 215 and the MMP, and that the individuals operating such entities may be subject to arrest and criminal prosecution under California law." (*Id.*)

Cooperatives must also file articles of corporation and be registered under the Corporations or Food and Agriculture Code as non-profit entities. *See* § 12311(b). The AG Guidelines provide, "the earnings and savings of the business must be used for the general welfare of its members or equally distributed to members in the form of cash, property, credits or services. Cooperatives must follow strict rules on organization, articles, election, and distribution of earnings, and must report individual transactions from individual members each year." AG Guidelines at 8 (citing §§ 12200, 12201).

Although defendant incorporated ANP, the evidence before the court establishes that it was not democratically controlled in that defendant Gentile was its C.E.O., his brother was the C.F.O., and his mother was named as Secretary and the three family members also served as the Board of Directors. Additionally, the business did not distribute earnings in that the Articles of Incorporation provided that there were no shares authorized to be issued. With the exception of one year, ANP did not file statements of information as required by California Corporations Code § 1502, resulting in the suspension of its corporate status on October 25, 2013.

The evidence therefore establishes, under any standard of proof, that in this respect as well defendant failed to strictly comply with California law in organizing and operating ANP.

/////

### 5.   Defendant Did Not Comply with State Tax Laws

Although defendant argues that he filed taxes in compliance with state law, the evidence before the court establishes that he did so only sporadically.  In this regard, the evidence establishes that ANP last filed a state tax return in 2010.  Indeed, defendant's business was suspended as of December 2, 2013 for the non-payment of taxes and the evidence indicates that ANP did not file a return in 2011 or 2012.

Again, even considered in isolation, the evidence that he failed to pay state taxes as required establishes that defendant Gentile did not strictly comply with state law in operating ANP.

### 6.   Other Indicia of Noncompliance Cuts against Defendant

The AG Guidelines advise law enforcement that the following are also indicia of an unlawful operation involving illegal sales of marijuana under state law by collectives or cooperatives: "(a) excessive amounts of marijuana, (b) excessive amounts of cash, (c) failure to follow local and state laws applicable to similar business, such as maintenance of any required licenses and payment of any required taxes, including sales taxes, (d) weapons, (e) illicit drugs, (f) purchases from, or sales or distribution to, non-members, or (g) distribution outside of California."  AG Guidelines at 11.

Here, as discussed above, the evidence is undisputed that law enforcement officers' search of ANP in June of 2012 resulted in the seizure of $68,173[20] in cash, methamphetamine, and a Mossberg rifle as well as a Glock pistol.  Defendant Gentile argues that the cash was maintained at the premises because ANP had to operate as its own bank after the bank closed its account, notes that only a small amount of methamphetamine was discovered and disclaims knowledge of it and the weapons were not illegal.

Defendant's explanations are unavailing.  The court finds that the presence of $68,173 in cash, two firearms and methamphetamine at ANP constitutes strong evidence under California

/////

---

[20]  This certainly qualifying as an excessive amount of cash as referred to in the AG Guidelines.

law, as recognized by the AG Guidelines, of an unlawful marijuana sales operation.[21]

## CONCLUSION

In *McIntosh* the Ninth Circuit held that "individuals who do not strictly comply with all state-law conditions regarding the use, distribution, possession, and cultivation of medical marijuana have engaged in conduct that is unauthorized, and prosecuting such individuals does not violate § 542." 833 F.3d at 1178. The court also held that a federal criminal defendant claiming that § 542 is violated by their prosecution is entitled to an evidentiary hearing "to determine whether their conduct was completely authorized by state law, by which we mean that they strictly complied with all relevant conditions imposed by state law on the use, distribution, possession, and cultivation of medical marijuana." *Id*. at 1179. The undersigned recognizes that, at least in California, this determination may in some cases be a difficult one in light of the unsettled questions of California law in the areas of cultivation and distribution of physician recommended marijuana.[22]

This, however, is not a close case in the undersigned's view. It is true that defendant Gentile took a few actions to suggest his compliance with state law. However, he has failed to prove by preponderance of the evidence that ANP was strictly a non-profit operation. Nor has defendant demonstrated his strict compliance with the California Corporations Code, state tax laws, or the AG Guidelines elaborating on the scope of the CUA and MMPA in his operation of ANP. Having failed to meet his burden of showing that his conduct was completely authorized by state law on the use, distribution, possession, and cultivation of medical marijuana, defendant

---

[21] The government also suggests that defendant's operation of ANP was not in compliance with state law as a result of alleged confrontations he had with an employee and a customer, the latter confrontation resulting in assault charges being brought against him. Because the court finds the evidence establishes several ways in which defendant Gentile failed to strictly comply with state law, it need not address whether evidence of these confrontations also support that conclusion.

[22] In a letter dated December 21, 2011 then California Attorney General Kamala D. Harris wrote to then President Pro-Tempore of the California Senate Darrell Steinberg and then Speaker of the California Assembly John A. Perez, identifying some of those unsettled questions of California law and policy which the Attorney General felt were suitable for legislative treatment and urged the legislature to take action in order to explain and clarify California law with respect to how, when and where individuals may cultivate and obtain physician-recommended marijuana. *See United States v. Daleman*, Case No. 1:11-cr-00385-DAD-BAM, Doc. No. 133-2 (E.D. Cal.).

1   has failed to establish that § 542 prohibited his prosecution on counts one through three of the

2   indictment.[23]

3        For all of the reasons set forth above, defendant's motion to correct the court's pretrial

4   order denying his motion to dismiss or enjoin, to enjoin the government from spending funds to

5   prosecute this action and to set aside his convictions (Doc. No. 178) is denied.   The

6   government's request for supplementation of the record (Doc. No. 204) is granted.  The

7   sentencing hearing in this action is now reset for June 5, 2017 at 10:00 a.m. before the

8   undersigned and the defendant is ordered to appear at that date and time for imposition of

9   judgment and sentence.[24]

10   IT IS SO ORDERED.

11     Dated:   **April 24, 2017**

12                                UNITED STATES DISTRICT JUDGE

---

[23]  As noted above, even if the burden here was borne by the government, based upon the evidence before the court the undersigned would conclude that the government has shown by clear and convincing evidence that defendant Gentile did not operate ANP in strict compliance with California law governing medicinal marijuana.

[24]  If either counsel is unavailable on June 5, 2017, they are directed to confer with one another and the undersigned's courtroom deputy, to determine an appropriate date and then submit a stipulation and proposed order.

22